UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BENJAMIN ELLIOTT, | * | CIV 10-04001-RAL |
| | * | |
| Plaintiff, | * | |
| | * | OPINION AND ORDER |
| vs. | * | GRANTING DEFENDANTS' |
| | * | MOTION FOR JUDGMENT ON |
| LAKE COUNTY, a political | * | THE PLEADINGS |
| subdivision of the State of South Dakota; | * | |
| its former Board of Commissioners | * | |
| members, | * | |
| CRAIG JOHANNSEN, | * | |
| RON JORGENSEN, and | * | |
| BERT VERHEY in their individual and | * | |
| official capacities; and its current | * | |
| BOARD OF ADJUSTMENT members | * | |
| in their official capacities, | * | |
| | * | |
| Defendants. | * | |

## I. INTRODUCTION

Benjamin Elliott, a Lake County, South Dakota property owner, seeks a declaration that Lake County's zoning ordinances were and currently remain unconstitutional, a permanent injunction against Lake County, and a permanent injunction against Lake County Board of Adjustment members to prevent further violations of constitutional rights. Elliot asserted federal question jurisdiction based on claims arising under the Commerce Clause, the Equal Protection Clause, the Takings Clause, the Privileges and Immunities Clause, the Contracts Clause of the United States Constitution, and 42 U.S.C. § 1983. Elliot asserted that this Court holds supplemental jurisdiction over additional claims, which arise under the Takings Clause, the Privileges and Immunities Clause, and the Contracts Clause of the South

-1-

Dakota Constitution.

Defendants, Lake County, Board of Adjustment, and individual members of either the Lake County Board of Commissioners or the Board of Adjustment, filed a Motion for Judgment on the Pleadings (Doc. 21), requesting this Court to dismiss Elliot's Section 1983 claims (Counts I, II, III, V, and VI) for being brought outside the statute of limitations period,[1] and to dismiss Elliot's state law claims that rely on this Court's supplemental jurisdiction (Count IV and parts of Counts II and III). This Court held a hearing on that motion on October 15, 2010.

## II. FACTS

When considering a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, this Court must "accept as true all factual allegations set out in the complaint" and "construe the complaint in the light most favorable to the plaintiff[s], drawing all inferences in [their] favor." Ashley County v. Pfizer, 552 F.3d 659, 665 (8th Cir. 2009) (quoting Wishnatsky v. Rovner, 433 F.3d 608, 610 (8th Cir. 2006)). Thus, the facts pled in the Complaint are accepted as true for the purposes of this motion.[2]

Elliot submitted a conditional use permit for a Class C Concentrated Animal Feeding

---

[1] As required by Rule 8(c), Defendants raised in their Answer the affirmative defense that Elliott's claims are barred by the applicable statute of limitations. (Doc. 16, at 14).

[2] The parties agreed at the October 15, 2010 hearing on the Motion for Judgment on the Pleadings that this Court may take judicial notice of the facts in Elliott v. Bd. of Cnty. Comm'rs. of Lake County, 2005 S.D. 92, 703 N.W.2d 361 (hereinafter "Elliott I"), and Elliott v. Bd. of Cnty. Comm'rs. of Lake County, 2007 S.D. 6, 727 N.W.2d 288 (hereinafter "Elliott II"), including Justice Zinter's concurrence in Elliott II, to the extent that such facts do not conflict with the allegations in Elliott's complaint (Doc. 1) in this case.

Operation[3] ("CAFO") for a hog confinement, which Lake County denied on August 21, 2001. (Doc. 1, at ¶ 7). The next day, Elliot scaled down his plan and submitted an application for a Class E CAFO to the Lake County Zoning Officer. (Doc. 1, at ¶ 9). Under the Lake County zoning ordinance in place at the time, building a Class E CAFO did not require a variance or a conditional use permit, but it did require a building permit, for which Elliott applied. The Lake County Zoning Officer - based on instructions received from the Lake County State's Attorney on behalf of the Lake County Board of Commissioners ("CBC") - delayed the issuance of the permit. (Doc. 1, at ¶ 10). The County further delayed issuance of the permit after it instituted a temporary moratorium on certain land uses, including Elliot's proposed Class E CAFO. (Id.). At a September 4, 2001 meeting, the CBC issued a formal moratorium on construction or expansion of CAFOs pending revisions to the comprehensive plan and zoning ordinance for Lake County. (Doc. 1, at ¶ 11).

In July of 2002, Lake County amended the comprehensive zoning plan to require a conditional use permit for all animal confinement operations in Lake County, including Class E CAFOs. (Doc. 1, at ¶ 13). As part of a CBC meeting on September 3, 2002, Lake County denied Elliot's building permit request. See Elliott I, 2005 S.D. 92, ¶ 5, 703 N.W.2d at 363. Denial was "based on the following reasons: (1) This structure does not appear to be conductive [sic] to the promotion of the overall health, safety, morals or general welfare," and "(2) the proximity to neighboring residences and to Lake Madison, coupled with the

---

[3] "Lake County Zoning Ordinances required a conditional use permit for all concentrated animal feeding operations of over 500 animal units. Operations for fewer than 500 animal units were permitted without a conditional use permit. Initially, Elliott submitted and the County denied a conditional use permit for a 750-animal unit facility." Elliott I, 2005 S.D. 92, ¶ 2, 703 N.W.2d at 361-62.

objections from those area residents should be taken into account." (Doc. 1, at ¶ 15). "The Commissioners consistently represented to Elliott and to the trial court that they had applied the pre-amended ordinances and had only considered Elliott's request as a request for a building permit." Elliott I, 2005 S.D. 92, ¶ 5, 703 N.W.2d at 363.

Elliot appealed denial of his permit application to the state circuit court and then the Supreme Court of the State of South Dakota. His "Petition Contesting Denial of Building Permit and Notice of Appeal" included a petition, which "asked the court for relief under the authority of SDCL 11-2-61 as an appeal from a county board of adjustment," and an appeal notice, which "asked for relief under SDCL 7-8-27 as an appeal from the board of commissioners." Elliott I, 2005 S.D. 92, ¶ 6, 703 N.W.2d at 363.

The circuit court deemed Elliott's lawsuit to be a direct appeal from a decision of the CBC and proceeded to consider the case under SDCL 7-8-27 and 7-8-30. Elliott I, 2005 S.D. 92, ¶ 6, 703 N.W.2d at 364. After a trial reviewing the permit application denial de novo, the circuit court affirmed the County's decision. Elliott I, 2005 S.D. 92, ¶ 1, 703 N.W.2d at 361. The Supreme Court of South Dakota, questioning whether the trial court had authority and jurisdiction under SDCL ch. 7, remanded and directed the circuit court to determine whether it had jurisdiction. Elliott I, 2005 S.D. 92, ¶ 18, 703 N.W.2d at 369. The Supreme Court in Elliott I posed the following three jurisdictional questions:

> 1. Whether the trial court had authority and jurisdiction under SDCL 7-8-27 and 7-8-30.
> 2. By what authority did the Commissioners deny Elliott's building permit application - as zoning officer, as a board of adjustment, or as a board of county commissioners?
> 3. Whether Elliott's pleadings and actions sufficiently preserved his right to appeal or were sufficiently drafted to establish jurisdiction in circuit court.

Elliott I, 2005 S.D. 92, ¶ 16, 703 N.W.2d at 368; see also Elliott II, 2007 S.D. 6, ¶ 7, 727 N.W.2d at 289 (discussing Elliott I).

On remand, the circuit court - without deciding questions one and two - answered question three and dismissed Elliott's case for lack of jurisdiction. Elliott II, 2007 S.D. 6, ¶¶ 7-8, 727 N.W.2d at 289. On appeal after remand, Elliott "contend[ed] that his original circuit court pleading was either a petition for a writ of mandamus or a petition for a writ of certiorari." Id. at ¶ 1, 727 N.W.2d at 288. On January 10, 2007, the Supreme Court of South Dakota in Elliott II affirmed the circuit court dismissal on the basis that Elliott's petition was neither "duly verified" by Elliott, as required by SDCL 11-2-61 for a petition for a writ of certiorari, nor "issued upon affidavit," as required by SDCL 21-29-2 for an application for a writ of mandamus to force the zoning official to act.[4] Id. at ¶¶ 10-13, 18, 727 N.W.2d at 289-290. Hence, the Supreme Court of South Dakota reasoned that "in either case Elliott's pleading [was] fatally flawed," and affirmed the circuit court. Id. at ¶ 18, 727 N.W.2d at 290. In a concurring opinion, Justice Zinter, discussing the underlying procedural history of Elliott's claims, noted that:

> Elliott commenced this case by an unverified October 2002 Petition, claiming that on August 24, 2001, he had filed an appeal to the Board of Adjustment (the county commission acting as the board of adjustment) and a petition for mandamus. However, the 2001 appeal and the petition for mandamus were part of a separate suit

---

[4]In Elliott II, the Supreme Court of South Dakota did not address whether Elliott's pleadings were sufficiently drafted under SDCL 7-8-27 and 7-8-30 as an appeal from a board of county commissioners, presumably because Elliott "contend[ed] that his original circuit court pleading was either a petition for a writ of mandamus or a petition for a writ of certiorari," Elliott II, 2007 S.D. 6, ¶ 1, 727 N.W.2d at 288, which are governed by SDCL 21-29-2 and 11-2-61, respectively. Whatever its rationale might have been, the Supreme Court of South Dakota interpreted South Dakota law to determine that Elliott's pleadings did not suffice to confer jurisdiction on the circuit court, and this Court must abide by decisions of the Supreme Court of South Dakota for interpretations of South Dakota law.

> that appears to have been abandoned, and therefore, those requests for review are not before us.
>
> Consequently, Elliott seeks to resurrect the 2001 appeal to the Board of Adjustment and the petition for mandamus by *referencing* them in this current action. Elliott also argues that he should have been entitled to amend his 2002 pleadings to incorporate the 2001 action or to consolidate it with the current action. These requests were denied by the circuit court, and Elliott has not appealed that decision. Therefore, the 2001 appeal and petition are not reviewable by this Court as a part of the 2002 action.

Id. at ¶¶ 24-25, 727 N.W.2d at 291.

Nearly three years after the Elliott II decision, on January 4, 2010, Elliott filed his Complaint (Doc. 1) in this case, asserting that the actions of Lake County and its officials acting under the color of law have substantially interfered with his property rights, civil rights, and other rights. The Complaint contains the following claims:

- Count I: Violation of Interstate Commerce Clause;
- Count II: Equal Protection Clause and Alternatively, Due Process Violations;
- Count III: Privileges and Immunities Clause;
- Count IV: Interference with Business Expectancy and Contract;
- Count V: Regulatory Taking; and
- Count VI: Violation of 42 U.S.C. § 1983 (Elliot seeks compensatory and punitive damages for violation of the Due Process Clause, Commerce Clause, and Equal Protection Clause as set forth in Counts I, II, III, and V).

## III. DISCUSSION

### A. Statute of Limitations

Elliott bases Counts One, Two, Three, and Five of his Complaint on 42 U.S.C. § 1983. (Doc. 1, at ¶ 57). "The Supreme Court has instructed courts to apply the most analogous state statute of limitations to claims made under [Section 1983]." Bell v. Fowler, 99 F.3d 262, 265-66 (8th Cir. 1996) (citing Wilson v. Garcia, 471 U.S. 261, 266-68 (1985) (noting that "[w]hen Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not

inconsistent with federal law or policy to do so.")). "The statute of limitations for claims brought under 42 U.S.C. § 1983 is generally the applicable state law period for personal injury torts." Strandlund v. Hawley, 532 F.3d 741, 746 (8th Cir. 2008) (citing City of Rancho Palos Verdes v. Abrams, 544 U.S. 113, 124 n.5 (2005)). In South Dakota, "[a]ny action brought under the federal civil rights statutes may be commenced only within three years after the alleged constitutional deprivation has occurred." SDCL 15-2-15.2.

## B. Accrual of Cause of Action

"The accrual date of a Section 1983 cause of action is a question of federal law." Wallace v. Kato, 549 U.S. 384, 388 (2007). "[I]t is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." Id. (internal citations omitted); see also Johnson v. Mott, No. 09-2192, 2010 U.S. App. LEXIS 10076 (8th Cir. 2010) (same). "Exhaustion [of administrative remedies] is not a prerequisite to an action under Section 1983." Patsy v. Bd. of Regents, 457 U.S. 496, 501 (1982); see also L&H Sanitation, Inc. v. Lake City Sanitation, Inc., 769 F.2d 517, 523 (8th Cir. 1985) (noting that exhaustion of state remedies is not required prior to bringing a section 1983 action and "the availability of state remedies should not bar [plaintiff's] federal § 1983 remedy" against city following arbitrary contract award); Uhl v. Swanstrom, 876 F. Supp. 1545, 1558 (N.D. Iowa 1995) ("There is no exhaustion of state remedies requirement before a civil rights suit may be filed under 42 U.S.C. § 1983, as there is with Title VII claims."). In addition, "[i]n cases where the [constitutional] right asserted does not depend on the procedural protections accorded the plaintiff, the availability of a postdeprivation hearing is no defense, since the constitutional violation exists independent of

the procedures for redressing the deprivation that are available." Id. (quoting Begg v. Moffitt, 555 F. Supp. 1344, 1362 (N.D. Ill. 1983)).

Elliott's claim accrued in 2002, when Lake County denied his application for a building permit. Once Lake County denied the building permit application, the events underlying the requisite elements of the causes of action alleged in the Complaint had occurred. All the factual allegations asserted in the Complaint forming the basis of Plaintiff's claims occurred no later than the 2002 denial of Elliott's building permit application. He had a complete and present cause of action at that time, and later consideration by the circuit court and the Supreme Court of South Dakota did not alter the accrual date. Elliott could have brought his constitutional claims following the 2002 building permit denial because the zoning authorities had arrived at a final, definitive position regarding how the regulations at issue were applied to the particular land in question. Elliott argued in the hearing on this motion and in his written briefs, respectively, that his cause of action did not accrue until either 2007, when his state litigation concluded with Elliott II, or 2009, when two Supreme Court of South Dakota opinions[5] involving the procedures for appealing county and board of adjustment decisions to circuit court were issued. His complaint, however, is replete with allegations that his claimed injury actually consists of the 2002 denial of his building permit application.[6]

---

[5]See Armstrong v. Turner Cnty. Bd. of Adjustment, 2009 S.D. 81, 772 N.W.2d 643; Goos RV Ctr. v. Minnehaha Cnty. Comm'n, 2009 S.D. 24, 764 N.W.2d 704.

[6] (Doc. 1, ¶ 4 ("Each of the individual defendants was a member of the Board of Commissioners and Board of Adjustment who acted unlawfully in regard to Elliott's building permit application."); ¶ 22 ("Due to the actions of Lake County and individuals acting under color of state law, the building permit which it was lawfully required to issue to Elliott was

In terms of the accrual analysis, this case is analogous to Lawson v. East Hampton Planning & Zoning Comm'n, No. 3:07CV1270, 2008 WL 431297 (D. Conn. Sept. 22, 2008) (section 1983 claim accrued when the plaintiff knew or had reason to know of the defendant's denial of his application for a special permit), and Soppick v. Borough of W. Conshohocken, 118 Fed. Appx. 631 (3d Cir. 2004) (Section 1983 accrual date occurred when borough issued "stop work" order). In Lawson, the court noted that "unless a landowner has received a final decision from the initial decisionmaker regarding the application of zoning regulations to his property, his constitutional challenge is not ripe for adjudication." 2008 WL 431297, at *3. Lawson had applied for a permit to excavate earth from his property, but Defendant planning and zoning commission denied the application. Lawson learned of the denial concerning his permit application on August 4, 2004, yet did not file a section 1983 claim until August 21, 2007. Lawson argued that a decision issued by the Connecticut Superior Court on December 13, 2005 caused his claim to accrue, but the federal district court rejected that argument, concluding that:

> Lawson's arguments that the statute of limitations was tolled during his administrative appeal and that this action was timely filed within three years of the

---

delayed and legal use of the property at issue in Lake County was so substantially restricted that the intended use is no longer feasible."); ¶ 33 ("In the August 22, 2001 building permit application, Elliott was also subject to action by the individual Defendants named above who prejudged his application, exhibiting procedural tactics and a final decision which demonstrated bias against his proposed lawful use."); ¶ 40 ("Upon application for a permitted use, Elliott was stopped by first an initial 'administrative hold' and later a moratorium on a lawful land use. The moratorium only applied to Elliott, as he was the only person seeking a building permit for a CAFO at the time. . . The subject building permit was denied and implementations of the amended Zoning Ordinance changes have chilled development of the proposed land use."); ¶¶ 50-55 (asserting that Lake County's failure to issue a building permit constituted a regulatory taking); ¶ 58 ("[T]he Defendants' actions relating to the denial of a lawfully permitted use was discriminatory and in abrogation of Plaintiff's federal and state rights.").

superior court's decision in that appeal are without merit . . . Indeed, Lawson's claim that his action was not ripe until the conclusion of his administrative appeal confuses exhaustion with ripeness. Finality of administrative action is conceptually distinct from the doctrine of exhaustion of administrative remedies." Id. at *5-7. "The issue of ripeness under Williamson has no bearing on whether [an] action was timely filed under the applicable statute of limitations.

Id. at *7. Thus, "the statute of limitations on Lawson's section 1983 claim was not tolled while he litigated the administrative appeal in superior court." Id.; cf. Soppick v. Borough of W. Conshohocken, 118 Fed. Appx. 631 (3d Cir. 2004) (Section 1983 accrual date occurred when borough issued "stop work" order).

Elliott seems to confuse ripeness with exhaustion when arguing that his section 1983 claim did not accrue until Elliott II was issued on January 10, 2007. The Supreme Court of the United States distinguishes these two concepts and has adopted specific ripeness requirements for cases involving challenges to land use decisions:

> While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate.

Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 191 (1985). "It is well established that, in cases involving land-use decisions, a property owner does not have a ripe, constitutional claim until the zoning authorities have had 'an opportunity to arrive at a final, definitive position regarding how they will apply the regulations at issue to the particular land in question.'" Sameric Corp. v. Philadelphia, 142 F.3d 582, 597 (3d Cir. 1998) (internal citations omitted).

Here, the final decision from Lake County that caused Elliott's claimed injury occurred in 2002 when the building permit application was denied. The "initial

decisionmaker" on Elliott's application was Lake County. See Williamson, 473 U.S. at 191; Lawson, 2008 WL 431297, at *3. Consideration by the circuit court and the South Dakota Supreme Court did not alter the accrual date of Elliott's section 1983 claim. Elliott could have brought his constitutional claims following the 2002 building permit denial because the zoning authorities arrived at a final, definitive position regarding how the regulations at issue were applied to the particular land in question.

## C. Tolling

In the alternative, Elliott contends that, if his claims accrued in 2002, the statute of limitations was tolled until January 10, 2007, the date that the Supreme Court of South Dakota issued its opinion in Elliott II. Whether tolling applies to a section 1983 claim is determined by state law. Williams v. Pulaski County Detention Facility, 278 Fed. Appx. 695, 695 (8th Cir. 2008) ("[B]ecause federal courts borrow state limitations periods for section 1983 actions, federal courts must also borrow state tolling law.") (quoting Johnson v. Rivera, 272 F.3d 519, 521-22 (7th Cir. 2001)); Baker v. Chisom, 501 F.3d 920, 922 (8th Cir. 2007) (applying state tolling statute to section 1983 claim); White v. Garrison, No. 95-2052, 1995 U.S. App. LEXIS 33469, at *2-3 (8th Cir. 1995) (citing Bd. of Regents of Univ. of New York v. Tomanio, 446 U.S. 478, 484 (1980)).

Under South Dakota law, "[t]raditionally, compliance with statutes of limitations is strictly required and doctrines of substantial compliance or equitable tolling are not invoked to alleviate a claimant from a loss of his right to proceed with a claim." Dakota Truck Underwriters v. S.D. Subsequent Injury Fund, 2004 S.D. 120, ¶ 17, 689 N.W.2d 196, 201 (quoting Peterson v. Hohm, 2000 S.D. 27, 607 N.W.2d 8). The justification for this

restrictive approach to equitable tolling "is speedy and fair adjudication of the respective rights of the parties." Id. "In most cases, this important principle underlining the statute of limitations is appropriately advanced by refusing to judicially modify the harsh effect imposed by a statute of limitations." Id. at ¶ 18, 689 N.W.2d at 201.

South Dakota courts have recognized an exception to the statute of limitations in some instances under the doctrine of equitable tolling. Id. Under South Dakota law, "[f]or the doctrine of equitable tolling to apply, three things must be shown: "(a) timely notice, (b) lack of prejudice to the defendant, and (c) reasonable and good-faith conduct on the part of the plaintiff." Dakota Truck Underwriters, 2004 S.D. 120, ¶ 24, 689 N.W.2d at 202 (quoting Peterson, 2000 S.D. 27, ¶ 8, 607 N.W.2d at 13).

Upon examination of the record, the Court finds that Elliott did not provide timely notice of his federal claims. Elliott's building permit application was denied in September of 2002, yet he failed to file his complaint in this case until January 4, 2010. Elliott's pleadings contain no indication that he provided any notice of his federal claims to Defendants at any time prior to filing the complaint in this case.

Application of equitable tolling to Elliott's claims also would cause some prejudice to Defendants, although probably not significant prejudice. Defendants would find themselves in the position of defending anew a building permit decision made in 2002. Extensive litigation arising out of that decision, including two appeals to the Supreme Court of South Dakota, already occurred, concluded in 2007, and resulted in dismissal for lack of jurisdiction. Despite being informed of potential jurisdictional defects in his state litigation no later than 2005 - in the Elliott I opinion - Elliott did not notify Defendants of his federal

claims until filing his federal action more than four years after Elliott I.

The third element does not support equitable tolling to Elliott's claims, because Elliott's delay in bringing his federal action cannot be deemed reasonable under the circumstances. Dakota Truck Underwriters, 2004 S.D. 120, ¶ 23, 689 N.W.2d at 202; Peterson, 2000 S.D. 27, 607 N.W.2d 8 (citing Braaten v. Deere & Co., 1997 N.D. 202, 569 N.W.2d 563, 566). In both Peterson and Braaten, "plaintiffs sought to bring suits in federal courts only to have them dismissed because diversity jurisdiction was lacking," and despite the awareness "that the cases might be subject to dismissal by the federal courts, they let the statutes of limitation run in the respective state courts before attempting to file their claims in the state forums." Dakota Truck Underwriters, 2004 S.D. 120, ¶ 23, 689 N.W.2d at 202 (discussing Peterson and Braaten). Similarly, Elliott sought to bring suit in state court only to have his case dismissed for want of jurisdiction. Even though Elliott was aware that the case might be subject to dismissal in state court, Elliott let the statute of limitations run in federal court before attempting to file his federal claims. See Elliott I, 2005 S.D. 92, 703 N.W.2d 361 (posing three jurisdictional questions, remanding, and directing circuit court to determine whether it had jurisdiction). On the date Elliott I was decided, Elliott still had more than two weeks to file his federal claims before expiration of the three-year statute of limitations. Instead, he waited until 2010.

The Court, as expressed during the motion hearing, understands why Elliott thought that the state court had jurisdiction and would hear the merits of his claims and arguments. This Court of course does not have the authority to reverse the Supreme Court of South Dakota or consider whether Elliott I and Elliott II were properly decided. This Court must

confine its analysis to whether Defendants' Motion for Judgment on the Pleadings should be granted. Under the laws and facts taken from the Complaint and construed in the light most favorable to Elliott, the Motion for Judgment on the Pleadings should be granted.

## IV. CONCLUSION

Based on the foregoing, it is

ORDERED that Defendants' Motion for Judgment on the Pleadings (Doc. 21) is granted. It is further

ORDERED that Counts I, II, III, V, and VI of Plaintiff's Complaint (Doc. 1), to the extent such claims are brought under federal law, are barred by the statute of limitations. Because these counts comprise all claims over which this Court has original jurisdiction, it is further

ORDERED that Counts II, III, and IV of Plaintiff's Complaint (Doc. 1), to the extent such claims are brought under South Dakota law, are dismissed under 28 U.S.C. § 1367(c), because this Court declines to exercise supplemental jurisdiction.

Dated November 3, 2010.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE